FILED

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

|  |  |
|---|---|
| | ) |
| **NOEL VINCENT THOMAS** | ) |
| **PRO SE LITIGANT** | ) |
| **PLAINTIFF** | ) CASE No._8:22 cv 1610 KKM – AAS_ |
| Vs. | ) **JURY TRIAL DEMANDED** |
| **FLORIDA DEPARTMENT OF  HIGHWAY** | ) |
| **SAFETY AND MOTOR VEHICLES, (DHSMV)** | ) |
| **MIKE STACY, FLORIDA DHSMV,** | ) |
| **INSPECTOR GENERAL OFFICE,** | ) |
| **STEPHANIE D DUHART, FLORIDA DHSMV,** | ) |
| **BUREAU OF RECORDS, (MS)** | ) |
| **MARIE T RIVES, FLORIDA** | ) |
| **ATTORNEY GENERAL OFFICE** | ) |
| **DEFENDANTS.** | ) |

## COMPLAINT WITH DEMAND FOR JURY

1. Plaintiff, Noel Vincent Thomas, bring this action for violations of states and federal laws against Defendants Florida Department of Highway Safety and Motor Vehicles and Florida Attorney General, their related divisions and departments including all their affiliates and officials for conspiring to commit fraud and negligence and denying due process, and equal protection of the law.

## JURIDICTION AND VENUE

1) This action is for claims of fraud, conspiracy, negligence, violation of equal protection and due process clauses of the fourteenth amendment of the U.S. Constitution pursuant to 42 U.S.C. section 1983 and various Florida and Alabama state laws.

2) Under the constitution and laws of the United States, Florida and Alabama State laws does this action arise. This Court has the jurisdiction pursuant to 28 U.S.C. sections 1331, 1332, 1343 and 1367.

3) The venue is proper in the Tampa Division of the United States District Court for the Middle District of Florida because the alleged acts were committed by Florida and Alabama state officials and Plaintiff resides in Tampa, Florida.

4) Venue lies in this Judicial District pursuant to 28 U.S.C. section 1391(b) in that Plaintiff is a resident of this district and the claim alleged, originated in said area.

1

## PARTIES INVOVLED

1) Plaintiff is a U.S. military veteran that occasionally work through temporary agencies and live in HUD-VASH housing and is a resident of Tampa, Florida.

2) Defendant Florida Department of Highway Safety and Motor Vehicles is a state government agency who regulate traffic issues.

3) Defendant Florida Department of Highway Safety and Motor Vehicles Inspector General is an investigative division of Florida DHSMV.

4) Defendant Florida DHSMV, Bureau of Records, Division of Motorist Services is a record division of Florida DHSMV.

5) Defendant Florida Attorney General is a statewide elected official directed by the Florida Constitution to serve as the chief legal officer for the state of Florida.

## STATEMENT OF FACTS AND ALLEGATIONS

In the year of 1987, Plaintiff had a car accident in Gulf Breeze, Florida and according to information received from Florida and Alabama Department of Motor Vehicles (DMV), the person(s) involved in the incident was not satisfied with the outcome of the insurance settlement, so they apparently obtained a lawyer and filed a civil suit against Plaintiff in the year of 1989 without giving Plaintiff any legal or proper notification of such an action. But during that time frame Plaintiff was incarcerated and the attorney for the victim(s) came to visit him to get him to sign some legal documents for the purpose of compensating the victim(s) for damages, but that attorney never mentioned any civil actions planned or pending against Plaintiff, so Plaintiff refused to comply with the unjust

2

demand, and in response, that attorney became totally offended and abruptly left the meeting. Now the Defendants have constantly insinuated that the victim's lawyer and the default judgment were figments of Plaintiff's imagination but in their motion to dismiss, filed in the Hillsborough County Small Claims Court (HCSCC), on March 29, 2021, they were repeatedly referencing the terms, private Florida attorney, unnamed Florida attorney and unnamed private personal injury attorney *(See E-1,2,3),* which confirms that the Defendants know the identity of that individual and is presently engaged in some type of illegal relationship with said attorney because Plaintiff never mentioned any personal characteristic of the victim's lawyer, which means, this is a continuous conspiratorial scheme being implemented in a malicious manner. The Defendants also provided a document to Plaintiff dated February 1, 2012, which displays his driver license being suspended on September 5, 1989, and a default judgment pending *(See E-4),* which proves the Defendants and the victim's attorney conspired to use an illegal document "(default judgment)" to commit intra and interstate crimes by falsifying and fabricating government documents to deny Plaintiff driver's privileges for over twenty years. Once Plaintiff was released from prison in the year of 1994, he immediately renewed his driver license without any problems and maintained them for four years up until the expiration date, which was the year 1998, where Plaintiff paid for the renewal fees and cleared the background search for any infractions on his record, but several weeks later he received a letter from Alabama DMV, informing Plaintiff that a hold had been placed upon his driver's privileges without explanation or documentation to verify and justify such an

3

action or without the return of the renewal fees. And this was not a suspension, cancellation or revocation but rather a retaliation against Plaintiff for not complying with the desires of a corrupt attorney who used his influence to get Alabama and Florida DMV, officials to commit the intra-interstate crime of fraud. After weeks of Plaintiff attempting to get information on why this hold was placed on his driver's license he was finally told by Alabama and Florida DMV, that a default judgement had been filed against him without providing any documentation to prove that claim. For at least 10 years Plaintiff fought to get information concerning the default judgement but to no avail was any progress made, but in the year of 2007, or 2008, Plaintiff received a jaywalking citation and Florida DHSMV, began using that as a pretext to continue to deny him driver's privileges *(See E-4,5,6).* All the afore-mentioned exhibits displays significant information, namely, the falsified driver's license expiration date, which is July 16, 1998, and it is important to note, that Plaintiff never had driver license in Florida until May 10, 2019, so this government information is false and fabricated and proves that both Alabama and Florida DMV coordinated and conspired to deny Plaintiff driver's privileges due to the fact that this is the same date that the Defendants officially placed the hold on Plaintiff's driver license. The above-mentioned exhibits also show false and fabricated information relating to dates and actions, specifically November 6, 2009, where a Florida driver license was cancelled and on April 29, 2009, another Florida driver related document was suspended, then on September 5, 1989, another driver related item was suspended and a default judgment filed *(See E-4,5),* and both of those exhibits were issued on the respective dates of February 1, 2012, and July 16, 2013, yet

4

the date of, May 10, 2019, was the first time that Plaintiff was ever issued driver's license in the state Florida, so why is that misrepresenting information listed on Florida DHSMV, documents? Then on June 12, 2018, Plaintiff wrote letters to Alabama Law Enforcement Agency (ALEA), Driver License Division (DLD) Chief, Deena L Pregno; ALEA, Title VI Program Coordinator; and Florida Department of Highway Safety and Motor Vehicles (DHSMV) Consumer Advocate, explaining his situation and requesting documentation and assistance from these agencies to try and rectify the extreme action of denying Plaintiff his driver's privileges for over twenty years *(See E-7)*. Then on June 26, 2018, Plaintiff received an email from Alabama Law Enforcement Agency (ALEA) Driver License Division (DLD) Chief, Deena L Pregno, making some serious false allegations and insinuating that Plaintiff had a Florida identification card and an Alabama driver license at the same time in the year of 1998, without providing documents to support those accusations *(See E-8)*. And that concocted idea became the new excuse for placing the hold on Plaintiff's driver license, so he immediately responded to that e-mail to correct the errors of Mrs. Deena L. Pregno, but she refused to provide the requested documents to support her allegations or work toward a resolution to the problem and ended all future lines of communications. In Mrs. Deena L Pregno's email, she stated that she spoke to someone at Florida DHSMV, to try and track down why they had reported Plaintiff driver's privileges as being suspended, and here at this point the very action by ALEA, Driver License Division Chief, is criminal because this is the same agency that allegedly suspended Plaintiff's driver license on July 16, 1998, and then reinstated them on June 26, 2018, yet ALEA, Driver License Division Chief, was requesting information from

5

another state DMV agency on the suspension status of Plaintiff's Alabama driver license, in which ALEA, DLD, are partially responsible for the denial of such privileges. First it was totally impossible for Florida DHSMV, to give Alabama DMV information concerning Plaintiff driver's privileges since he never had driver license in Florida until May 10, 2019, and secondly Plaintiff did not live in Florida until the early 2000's, so he had no residence in the state during the period of time in question, which means, he could not possess a driver license or an identification card from Florida. The ALEA, DLD, Chief, further stated that Florida DHSMV, discovered a non-existence ID card that Florida System reported as a driver license in or from a suspended state, without mentioning the location, then the ALEA, DLD, Chief, admitted an error occurred and once the mistake was realized it was corrected and this was after twenty years of Plaintiff complaining and contacting that agency to resolve the issue. After not receiving any further reply from the above-mentioned officials or agencies, Plaintiff sent certified letters to ALEA, Secretary, Hal Taylor *(See E-9)* ALEA, Acting Director, Charles Ward *(See E-10),* and Florida DHSMV, Inspector General, Julie Leftheris *(See E-11),* asking for their assistance in providing the requested information and to start an investigation to help resolve this twenty-year ongoing travesty. Plaintiff received a letter from Mike Stacy, Florida DHSMV, Inspector General Office, dated July 27,2018, acknowledging the reception of Plaintiff complaint with its supporting documentation and further stated that after a thorough investigation of Alabama DMV, placing the illegal hold on Plaintiff's Alabama driver license, the Inspector General Office, determined that the problem did not start with Alabama DMV, but rather emanated from Florida DHSMV, Division of Motor Services, in which

6

was discovered during the investigation *(See E-12)*. But unfortunately, the Inspector General Office, response was to refer the matter back to the same officials who refused to respond, comply or correct the problem and this is after Plaintiff clearly identified all those entities whom he had contacted concerning his driver's privileges being place on hold. For twenty years Plaintiff have been without driver license, forced to use unreliable public transportation to get back and forth to under employed jobs and denied access to higher paying jobs because Plaintiff lacked proper transportation to get to those locations which caused him to live a poverty-stricken life existence. Then Plaintiff received a letter dated August 31, 2018, From Florida DHSMV, Division of Motor Services, claiming to have rectified some fictitious error that they asserted occurred when their system showed Plaintiff's identification card as being cancelled, when it had only expired, and this was the year of 2018 *(See E-13)*. And attached to that August 31, 2018, Florida DHSMV (MS), letter was a three-year driver's history record printout, that covered the time period of January 30, 2014, to August 31, 2018, and nowhere on that document does it show any items being cancelled, revoked, suspended or expired *(See E-14)*. Florida DHSMV, failed to produce an accurate and complete driver's history, starting with the year of 2000, which would have showed and proved Plaintiff never had any legal issues with his driver's license or identification card, but also displayed on that government printout was a false and fabricated original license issue date of August 6, 1987, yet Florida DHSMV, only provided Plaintiff with a three-year driver's history, while claiming they have information on Plaintiff that date back 30 years to the time of August 6, 1987, which in reality is the time period that Plaintiff had a car accident in Gulf Breeze,

7

Florida *(See E-14,18,19).* And in a final attempt to get Alabama and Florida DMV, officials to correct their past illegal behavior, Plaintiff sent certified letters to both ALEA, DLD, and Florida DHSMV, on October 16, 2018, in hope that they would comprehend Plaintiff's determination to accomplish his objective and agree to work to resolve the complaint, but they rejected the offer to come to some type of settlement and continued the conspiracy *(See E-15,16).* Once all state remedies were exhausted Plaintiff filed a civil suit in the U.S. District Court, on October 9, 2018, to address the miscarriage of justice perpetrated by the Defendants for over twenty years. And on February 14, 2019, the U.S. District Court Magistrate Judge filed a report and recommendation (R&R) to deny Plaintiff motion to proceed in forma pauperis and to dismiss his complaint, for the stated reasons of failure to satisfy the threshold pleadings requirements, the immunity that several, "not all" the Defendants are entitled under the eleven amendment and failure to state a viable federal claim. Plaintiff then filed an objection to the R & R, and amended his complaint on February 27, 2019, and on April 18, 2019, the U.S. District Court Judge Overruled Plaintiff's objection motion and dismissed his amended complaint and ordered Plaintiff to file a second amended complaint without a legal or logical explanation for taking such an action. And on April 30, 2019, Plaintiff complied with the Court orders and on September 20, 2019, the U.S. District Court Magistrate Judge filed a second R & R and Plaintiff responded on October 4, 2019, and then on January 13, 2020, the case was complete dismissed. Plaintiff filed a notice of appeal, forma pauperis and an appointment of counsel motion, in the U.S. Court of Appeals on January 21, 2020, and on January 27, 2020, Plaintiff received an instructional letter from the U.S. Court of Appeals

8

Clerk's office, and on February 3, 2020, Plaintiff received another letter from the Clerk of the U.S. Court of Appeals, informing him to file a motion to proceed in forma pauperis. Then on February 10, 2020, Plaintiff received yet another letter from the Clerk of the U.S. Court of Appeals, instructing him to file a certificate of interested persons and on May 4, 2020, Plaintiff's motion to proceed in forma pauperis was denied by the U.S. Court of Appeals and on June 5, 2020, Plaintiff's complaint was dismissed for want of prosecution because Plaintiff failed to pay the filing fees. The actions by the U.S. Courts were a direct violation of the U.S Constitution and federal civil laws by denying Plaintiff due process and access to the courts, which forced Plaintiff to take that civil action into the Hillsborough County Small Claims Court (HCSCC), to obtain additional information and learn procedures and processes. But before Plaintiff initiated the law suit in the HCSCC, he contacted ALEA, Driver License Division and Florida DHSMV, and requested the following documentation: (1) A lifetime history of Plaintiff's Alabama driver license, which is dated December 23, 2020 *(See E-17)* (2) Plaintiff ordered a transcript of his driver's record from Florida DHSMV, dated January 11, 2021 *(See E-18)* and (3) On March 29, 2021, the Defendants filed a request for judicial notice in the HCSCC, with a false and fabricated government driver history document attached to it *(See E-19).* All the above documents are supposed to be historical records and contain accurate and complete information, but they all fail to show and prove that Plaintiff's driver license or identification card was ever suspended, revoked, cancelled or expired, which confirm that Defendants have violated state and federal laws by falsifying government documents and sending them to Plaintiff, the HCSCC, and other entities. The purpose of the Defendants fabricating

9

all the government documents filed with this complaint was to try and justify placing the illegal hold on Plaintiff driver's privileges for over twenty years, and if this Court will examine Florida DHSMV, transcript of drivers record *(See E-18),* and the driver record that was attached to the Defendant's request for judicial notice *(See E-19),* this Court will discover false and fabricated information under the heading of "Alabama original license issued", which has the date of August 9, 1987. What is that date and where did it come from? Plaintiff filed his Alabama driver's license abstract or history with this Court *(See E-17),* and according to that document the earliest issue date of Plaintiff's Alabama driver license on file is August 4, 1994, *(See E-17),* so where did Florida DHSMV, get that false information since Alabama records only date back to the year of 1994? Plaintiff stated earlier that he had a car accident in the summer of 1987, in Gulf Breeze, Florida and the August 9, 1987, date coincide with Plaintiff's car incident, so the Defendants are knowingly and willingly falsifying government documents to coverup and justify the illegal action taken against Plaintiff for over twenty years. After the dismissal of Plaintiff's federal law suit he filed multiple actions stemming from the same incident, that initiated this process, into the Hillsborough County Small Claims Court, (HCSCC), and those case numbers, dates and histories are as follows: **(1)** Civil case number 21-CC-000466, filed against Alabama Law Enforcement Agency, Driver License Division on January 5, 2021, in which Plaintiff provided the Lower Tribunal with numerous exhibits and a lengthy factual statement of claim, clarifying those document, yet the Defendants refused and failed to filed any pleadings, responses, exhibits or mount a defense against Plaintiff's allegations or causes of action but instead filed a motion to dismiss on

March 24, 2021, that was not in compliance with, *Florida Rule of Civil Procedure (FRCP) 1.140(a)(1),* which gave the Defendants twenty (20) days to respond to the summons and complaint and *FRCP 1.140(2)(A),* and *FRCP 1.140(2)(B),* which required the Defendants to serve an answer within forty (40) and thirty (30) days respectively. And on April 8, 2021, the HCSCC, ordered all parties to mediation and on that same day the Court filed a motion requiring electronic/telephonic appearances to determine if Defendants assertions of sovereign immunity and the expiration of the statute of limitation were valid. Then on April 9, 2021, Plaintiff filed a response to the Defendants motion to dismiss and on April 21, 2021, the HCSCC, issued orders granting the Defendant's motion to dismiss without taking into consideration Plaintiff's position, the evidence, the failure of the Defendants to respond to the complaint or the allowance of an evidentiary hearing or discovery. And also on April 21, 2021, Plaintiff filed a notice of appeal in the Second District Appeals Court and on that same date the HCSCC, forwarded a letter of transmittal and an acknowledgement of a new case to the same Court and on April 22, 2021, the Second District Court of Appeals sent Plaintiff orders to pay the filing fee and on December 21, 2021, the Second District Court of Appeals issued a mandate affirming the Lower Court decision, without providing Plaintiff with access to the Judge's argument or conclusion and what information they relied upon to arrive at such a warped decision. **(2)** Civil case number 21-CC-018676, file against Florida Department of Highway Safety and Motor Vehicles on February 25, 2021, where Plaintiff filed an eight (8) page statement of claim along with forty-one (41) pages of exhibits that supported all his allegations and causes of action, yet the Defendants failed to comply with Florida laws relating to the

**11**

time limits to respond, file pleadings, serve an answer or prepare a defense after receiving the summons and complaint. The Defendants instead of replying properly to the complaint they filed a motion to dismiss and a request for judicial notice on March 29, 2021, and this coincided with ALEA, Driver License Division motion to dismiss, which was filed on March 24, 2021,  at the exact time and with the precise motion, even though both lawsuits were filed at different time, yet these seemingly coincidence, only shows and proves conspiratorial communications design to commit fraud against both the above-mentioned states, the federal government and Plaintiff. And on April 21, 2021, Plaintiff filed a response to the Defendant's motion to dismiss, then on May 17, 2021, the HCSCC, held the pre-trial hearing  and on May 20, 2021, the HCSCC, ordered mediation and on June 18, 2021, both parties met in mediation in an attempt to negotiate terms of agreement to facilitate the resolution of Plaintiff's complaint and the attorney at that time for Florida DHSMV, agreed with many of Plaintiff's points of argument but stated that he was not in a position to make decisions for the agency, which led Plaintiff to believe that the attorney removed himself from the case because of the evidence and argument was so compelling that he refused to take part in a conspiracy to commit fraud against the Court, the States and Plaintiff. And on September 20, 2021, the final hearing was scheduled and on September 22, 2021, Florida DHSMV, filed a notice of substitution of counsel and on October 26, 2021, the final hearing was held, wherein Plaintiff was denied due process and access to the court by the HCSCC, Trial Judge who refused to allow Plaintiff the opportunity to present evidence and utilize laws, rules and statutes in his own defense. Then on February 1, 2022, the HCSCC, rendered an order

granting in part the Defendant's motion to dismiss , which denied three of the defense elements in the Defendant's argument, which are as follows: (1) sovereign immunity; (2) improper venue; and (3) statute of limitations, in which all are complex litigation issues that could not be resolved in the HCSCC, nor did the Defendants qualify for such, but the Defendants was granted the fourth element by the HCSCC, that alleged Plaintiff failed to state a claim and ordered Plaintiff to amend his complaint, in which he fully complied with on February 10, 2022. Then on February 18, 2022, Florida DHSMV, new legal representative, who is the Florida Attorney General Office, filed a notice of appearance, a motion for extension of time and a notice of related action, due to the possible reason that the second appointed legal counsel who represented the Florida DHSMV, in the October 26, 2021, final hearing, Plaintiff believe, that attorney also removed themselves from that position because of the overwhelming evidence against Florida DHSMV, and did not want to continue misrepresenting facts to the Court and being a part of a conspiracy. And at this point, Plaintiff need to emphasize these facts before moving forwarded because they will prove an expanding conspiracy by key elements in the state of Florida and they are as follows: **(1)** The Florida Attorney General Office became the legal counsel for Florida DHSMV, on February 18, 2022, and inherited all Plaintiff's court filings, which included false and fabricated government documents from Alabama and Florida DMV, and according to the mission statement of the Florida Attorney General Office, which one of its core duty is to, protect Florida consumers from fraudulent schemes but instead of fulfilling that objective they decided to represent the criminals who committed the act of fraud and conspiracy, and furthermore the Attorney General

**13**

have in their possession evidence to prove that fact but refused to report or
investigate the criminal activities. **(2)** On August 28, 2018, Plaintiff sent basically
the same complaint and attached exhibits to the then Florida Attorney General
Pam Bondi, by way of certified mail *(See E-20),* explaining, showing and proving
serious state and federal law violations, on the part of Alabama and Florida DMV,
but the Florida Attorney General refused to investigate and sent Plaintiff a letter
referring the matter back to the culprits who committed the crimes *(See E-21),*
even though they had in their possession falsely manufactured government
documents produced by both Alabama and Florida DMV. **(3)** The Florida Attorney
General conspired with Florida DHSMV, by filing false documents into the HCSCC,
and committed perjury with their testimony and failed to remove themselves
from this case, after discovering fraud by fabrication of government documents
and refuses to investigate or report the crimes to the proper authorities, thereby
assisting the perpetrators in the crime. And since the Florida Attorney General is
the lead counsel for Florida DHSMV and have access to all the illegal documents
of both Alabama and Florida DMV, in which Plaintiff will probably have to file for
discovery to get possession of that information, but in this instance, the Florida
Attorney General is purposely and knowingly representing violators of the law,
thereby, aiding and abetting them in their criminal conduct. The Florida Attorney
General willingly and knowingly illegally collaborated with HCSCC and Florida
DHSMV, to try and conceal and contain this lawsuit from coming into fruition by
forcing HCSCC, to hold an unlawful hearing without the Court being in full
compliance with *Florida Rule of Civil Procedure FRCP 1.440(c),* which requires the
Court to enter an order fixing a date for trial, but no such order was ever issued

**14**

by the Court *(See E-22).* Then on February 23, 2022, the HCSCC, granted the Defendant's motion for extension of time to respond to Plaintiff's amended statement of claim, in which they never did but instead filed a second motion to dismiss, filled with inaccurate and false information, filed on March 9, 2022, and on March 14, 2022, Plaintiff filed a response to the Defendant's motion to dismiss which received no reply or action from the HCSCC, or the Defendants. Then On March 21, 2022, the HCSCC, entered some type of orders that was immediately removed from the Court records and asserted that the document was submitted in error, but Plaintiff believe that the HCSCC, Trial Judge ruled in his favor, but the final decision was blocked by higher authorities due to the gravity of this case, so to remedy the confusion of that error Plaintiff filed a motion to expedite on April 20, 2022, and based upon the written and stamped information on that document by the clerk in the HCSCC, it showed Plaintiff's motion to expedite was received on April 20, 2022, *(See E-23),* then shown on the motion to expedite, there are multiple discrepancies of dates, for instance, the motion displays a stamped reception date of April 20, 2022, then there is yet another imprinted reception date on that document of May 3, 2022, and these are two different dates of receiving the same document, which probably means, the motion to expedite was in the custody of two different clerks for apparently two distinct purposes. Then the words, set hearing, was stamped on the motion to expedite, with the handwritten date of April 27, 2022, and the signature of some individual and it further exhibited a handwritten note, setting May 24, 2022, as a second hearing date without ever holding the April 27, 2022, hearing and nothing on that motion to expedite was legally binding and there has not been any official

**15**

order issued from the Court establishing either of the above hearing dates as directives *(See E-22),* and all the contents therein is completely contradictory and demand an investigation. Since the HCSCC, refused to review or entertain most of Plaintiff motions but have quickly responded to all the Defendants motions with rulings in their favor then that body have proven that it is not an impartial arbitrator, because the Defendants filed a notice of hearing on April 29, 2022, after Plaintiff filed his motion to expedite on April 20, 2022, and the Clerks of the HCSCC, illegally stamped and wrote notes and dates on Plaintiff's motion to expedite attempting to make the hearings appear official when no such official orders had been issued from the HCSCC. According to *FRCP 1440(c),* titled; Setting for Trial; which states, If the court finds the action ready to be set for trial, it shall enter an order fixing a date for trial. Trial shall be set not less than 30 days from the service of the notice for trial. By giving the same notice the court may set an action for trial. Both the Defendants and the HCSCC, have violated this rule by first, failing to give notice of hearing and entering an order fixing a date for trial for the April 27, 2022, final hearing and the Court failed to issue official orders for the May 24, 2022, final hearing fixing a trial date for such, thereby violating the above rule. But on May 23, 2022, Plaintiff was forced to file a motion for sanctions on opposing counsel because of the conspiratorial plans between the HCSCC, Florida Attorney General and the Defendants to compel Plaintiff into an illegal hearing without the HCSCC, issuing orders for the commencement of such an activity, in which Plaintiff refused to participate in that course of action and on May 24, 2022, that final hearing was held and the HCSCC, filed a court ticket attempting to justify its future action, of claiming Plaintiff failed to appear at a

16

hearing that was never ordered by the HCSCC and in fact, HCSCC, endeavored to personally call Plaintiff several times during the May 24, 2022, final hearing to get him to participate in the process, which is not at all a normal Court practice, especially after Plaintiff notified HCSCC, that Plaintiff would not attend such a venture *(See E-24)*. Then on May 25, 2022, Florida Attorney General Office emailed Plaintiff a message asserting that the HCSCC, Trial Judge reserved ruling and requested that their office upload a proposed order to the Court and further stated that if Plaintiff failed to respond with an objection by p.m. on May 31, 2022, that the proposed order would be filed with HCSCC, *(See E-25)*. In that proposed order, Florida Attorney General alleged two grounds as a basis for dismissal and they are as follows: (1) Plaintiff failed to appear at hearing; (2) Florida DHSMV, qualify for sovereign immunity; and since Plaintiff never complied with Florida Attorney General's May 25, 2022, email request and apparently the proposed order was never uploaded by the May 31, 2022, deadline *(See E-26)* because Plaintiff have several communications between the HCSCC, and the Florida Attorney General and nowhere in any of those documents is the proposed order mentioned, including the HCSCC, June 7, 2022, order denying Florida DHSMV, motion to dismiss *(See E-27,28)*. And in fact, the HCSCC, sent Plaintiff an email dated June 9, 2022, in response to Plaintiff's email reply, in which HCSCC, quoted a judicial cannon, which stated, The Code of Judicial Conduct provides that a judge shall not initiate, permit, or consider ex-parte communications, or consider other communications made to  the judge outside the presence of parties concerning a pending or impending proceeding. And the HCSCC, concluded by asserting, therefore the Court have CC'd the opposing counsel on

**17**

the email *(See E-29)*.  There are many communications going on between HCSCC, Florida DHSMV, and the Florida Attorney General Office that Plaintiff is not privy to or have access of, but the above-mentioned cannon only applies to Plaintiff when sharing his crucial and harmful information, which is proof positive of a widening conspiracy. On April 20, 2022, Plaintiffs filed a motion to expedite and on May 23, 2022, he filed a motion for sanctions on opposing counsel, due to the Florida Attorney General filing fraudulent documents and giving perjurious testimony in the HCSCC, and then concealing false and fabricated government documents to coverup the misdeeds of Alabama and Florida DMV, and the HCSCC, failed or refused to review or rule upon either of the above-stated motions and in fact, in the motion for sanctions on opposing counsel, Plaintiff quoted the first top four cannons of Florida Code of Judicial Conduct, that the HCSCC, is in complete violation of, yet the Court still attempted to use this same ethic coding to sanctify the act of conspiracy. The HCSCC, knows that the May 24, 2022, final hearing was illegal but they are now pretending as if it never occurred and that they are generously giving Plaintiff a second chance to appear at another distant final hearing and to prove that assertion is the fact that, on June 8, 2022, the HCSCC, began sending Plaintiff a chain of emails *(See E-27),* that was attempting to reschedule the May 24, 2022, final hearing without officially declaring such, and both the HCSCC, and the Florida Attorney General admitted that Plaintiff failed to appear but they refused to take legal action for the violation. Also on June 8, 2022, the HCSCC, filed an order denying the Florida DHSMV, motion to dismiss, which was submitted in the HCSCC, records on March 9, 2022, and according to that order, it appears that the specific purpose of the

**18**

May 24, 2022, final hearing was for the Florida DHSMV, motion to dismiss, filed on March 9, 2022, and there was no other reason given for the Court proceedings being held, yet the HCSCC, willingly and knowingly conducted a hearing that the Court failed to issue orders fixing a date for trial, which means Plaintiff was never officially notified of such a hearing but in the HCSCC, order it claimed Plaintiff failed to appear at the hearing *(See E-29),* then the HCSCC, Trial Judge asserted that after reviewing the Plaintiff's amended statement of claim and the response to the Florida DHSMV, motion to dismiss, the Court arrived at its conclusion and further stated that the only reason that the Court previously dismissed Plaintiff's statement of claim was based on pleading sufficiency with leave to amend, as justice would require. Then the HCSCC, Trial Judge asserted that the Florida DHSMV, motion to dismiss alleged two grounds as a basis for dismissal and they are as follows: (1) Failure to provide statutory notice; and (2) Failure to state a cause of action; and at this point the HCSCC, Trial Judge failed to give an opinion on the statutory notice argument but it is obvious that the Plaintiff met that standard due to the fact that the HCSCC, has in their possession numerous exhibits proving that the Florida DHSMV, were thoroughly notified over a course of years. And as for the failure to state a cause of action, the HCSCC, Trial Judge asserted that the Plaintiff's amended statement of claim is still not a beacon of clarity, the Court finds it to be sufficient enough to meet the pleading requirements in a small claim matter. And this is a serious problem area because the HCSCC, Trial Judge stated in the Defendant's dismissal order that the Court previously dismissed Plaintiff's statement of claim based on pleading sufficiency with leave to amend *(See E-29),* so Plaintiff have met the only requirement

specified by the HCSCC, which means that Plaintiff is the prevailing party and should be immediately awarded or compensated for damages and lost, but instead of complying with the law the HCSCC, is gearing up for another final hearing in the next few months without ever ruling on Plaintiff's motion to expedite filed on April 20, 2022, a document that received must attention from the HCSCC, by way of the Court writing and stamping information on that document but refused to review its contents *(See E-23),* Then the HCSCC, Trial Judge stated that, the Court finds that, given the standard to which the Court is confined in considering a motion to dismiss, the defenses raised in the motion to dismiss, like the statute of limitations and the sovereign immunity defenses raised in the previous motion, are not appropriate for determination at the motion to dismiss stage in this matter. In the above-stated opinion of the HCSCC, Trial Judge it is quite clear that the Court understand that the Florida DHSMV, have not fulfilled their obligation to the Court or Plaintiff, in properly responding to this action, by way of filing pleadings, answers, exhibits or presenting an adequate defense, therefore in order for the HCSCC, to rule on any complex litigation issue, the discovery process would be required and the HCSCC, scope and duty is not equipped to perform such an activity, yet the HCSCC, is attempting to hold another final hearing in the near future without ordering the discovery process but at the same time claiming in the Defendant's motion to dismiss denial order, that the defense grounds can be raised by Florida DHSMV, at the appropriate stage in the proceedings *(See E-29).* The question must be asked, what is the appropriate stage? Since this action have been pending in the HCSCC, for about two years and the Florida DHSMV, have failed to mount any type of defense and

the HCSCC, have denied all the defensive grounds that the Florida DHSMV, could rely upon, such as the following: (1) sovereign immunity; (2) improper venue; (3) statute of limitation; (4) failure to provide statutory notice; (5) failure to state a cause of action; and (6) failure to appear at hearing, so with all these denials, then what foundation does the Florida DHSMV, have to stand on in another final hearing? And further the HCSCC, Trial Judge asserted that the Court must confine itself to the four corners of the complaint and that given the standard to which the Court is confined in considering a motion to dismiss, it would not be appropriate for determination at the motion to dismiss stage in this matter, so HCSCC, is declaring its limitations on ruling on the above-stated defense grounds, therefore what is the need for another final hearing without implementing the discovery process or without the Florida DHSMV, bringing new evidence to warrant such an action. Due to the continuous disrespect and violations of the law by the HCSCC, Florida DHSMV, and Florida Attorney General, Plaintiff sent an identical copy of this complaint, by way of certified mail, to the Federal Bureau of Investigation (F.B.I.), Florida Attorney General and Florida Judicial Qualification Commission, on the date of June 16, 2022, *(See E-30,31,32),* with an expectant delivery date of June 21,2022. Then on June 22, 2022, a day after receiving Plaintiff's complaint a hit job or an assassination attempt on Plaintiff's life was carried out by a government agent or informant who was following the instructions of one or more of the above-mentioned agencies and this Court may ask how does Plaintiff know, or can prove those allegations to be true? The assailant objective was to crash his motor bike into the center of Plaintiff's bicycle at full speed with the assailant motor bike front wheel raised, knowing that type

**21**

of force would mow down Plaintiff and cause serious if not fatal injuries but Plaintiff was fully aware of the government agent or informant's intentions because of his erratic behavior, so Plaintiff maneuvered his bicycle in such a way that he avoided severe injuries but the perpetrator did eventually collided with Plaintiff and abruptly left the scene and evidently the assailant's family was outside observing the incident and came over to Plaintiff to apologize for this government agent or informant actions claiming it was an accident and requesting that Plaintiff not call the Sheriff Department but Plaintiff needed to know who the assailant was and the reason for the attack. Once the Sheriff Department arrived they asked Plaintiff to describe the assailant who had fled the crime scene and left the motor bike at his family's home, in which Plaintiff gave a complete description of both and those deputies kept asking Plaintiff why did he think this person purposedly crashed into him and Plaintiff told the Sheriff deputy that he had lawsuits pending against several government agencies and that it was not a coincidence that the afore-mentioned government entities received Plaintiff's complaint on June 21, 2022, which accused the Florida Attorney General of conspiring with the HCSCC and the Florida DHSMV, to commit fraud, by falsifying and fabricating government documents and refused to investigate the violations or remove themselves from the case and it now appears that extreme and fatal measurements were planned and to prove that point, is the fact that, this incident occurring the next day with a government agent or informant acting in the capacity of a hit man attempting to eliminate Florida government dilemma. The Sheriff Deputies thought or believed that Plaintiff was paranoid or a conspiracy theorist but as they began investigating by questioning

**22**

the assailant's family, they discovered some key information but was told to stand down from the investigation and that someone else would take control of the situation and this is when Plaintiff noticed the complete frustration on the faces of the first responding officers, due to the fact that this was a hit and run incident and they had all the evidence to make an arrest, but they were blocked from performing their duty. And then about an hour or so later the assailant came walking down the street in the midst of a group of the deputies and walked over to his family home and got on to his motor bike and rode off, without being detained or interrogated, or pursued which is proof positive that the perpetrator is not only a government agent or informant, but he has some power forces supporting his activities.

## CAUSE OF ACTION -1- FRAUD

**1)** Defendants, Florida Department of Highway Safety and Motor Vehicles (DHSMV) and Alabama Law Enforcement Agency (ALEA), Driver License Division (DLD), refused to properly respond and resolve Plaintiff's complaint concerning an illegal action of depriving Plaintiff of driver privileges in the year of 1998, by utilizing fabricated information on falsified government documents, namely, an alleged default judgement claim against him, without providing proof of its existence or the opportunity to rectify the problem *(See E-4).*

**2)** Defendants, Florida DHSMV, provided Plaintiff with false government documents dated February 1, 2012, and July 16, 2013, that contained fabricated information *(See E-4,5,6),* which displayed Plaintiff's driver license being suspended on September 5, 1989, then on November 6, 2009, it showed a Florida

driver license being cancelled and on April 29, 2009, another Florida driver related item was suspended, yet Plaintiff never had driver license in Florida until May 10, 2019, so Florida DHSMV, falsified government documents to try and justify criminal activities. Defendants, ALEA, DLD, sent Plaintiff a fabricated email dated June 26, 2018, making serious inaccurate assertions and insinuating Plaintiff had an Alabama Driver's license and a Florida identification card at the same time in the year 1998, without providing proof of such *(See E-8),* and then conspiring with Florida DHSMV, to concoct a story that Florida system reported Plaintiff's identification card as a driver license from another state, when in fact Plaintiff never lived or had an I D card in Florida until the early 2000's and only received a driver's license on May 10 ,2019, so that email shows Alabama and Florida DMV were conspiring to commit fraud by falsifying government documents and sending them via electronic system across state lines *(See E-8,13).*

**3)** In the year of 1994, Plaintiff renewed his driver license without any problems, then in the year of 1998, Plaintiff was permitted to pay the renewal fees and cleared the background check but a few weeks later he was sent a letter from ALEA DLD, denying Plaintiff driver's privileges without an explanation or a return of the process fees that they confiscated, thereby committing fraud by illegally extorting funds without providing goods and services. And further an unknown attorney along with Alabama and Florida DMV, utilized an illegal default judgement in the year of 1998, to place a hold on Plaintiff's driver license for over twenty years and then fabricated and falsified government documents to officialize the action *(See E-4,5,8,13).*

24

**4)** Plaintiff sent certified letters to the following agencies on June 15, 2018, soliciting their assistance in the matter of the illegal hold placed on Plaintiff driver's privileges *(See E-7):* ALEA, DLD; ALEA, Title VI Program Coordinator; Florida DHSMV, Consumer Advocate, and on June 26, 2018, Plaintiff received a false and fabricated government email response from ALEA, DLD, Chief Deena L Pregno, attempting to justify the illegal conspiratorial twenty-year-old fraudulent plot to deny Plaintiff driver's privileges *(See E-8).* If a legitimate default judgement was issued against Plaintiff in the year of 1989, he should have at least been notified by the victim's lawyer, or ALEA, DLD; or Florida DHSMV and provided the necessary documents to contest their decision or to be allowed to determine what course of action that was necessary to resolve the issue. On July 23, 2018, Plaintiff contacted multiple agencies and officials within Florida DHSMV and ALEA, DLD, by way of certified mail *(See E-9,10,11),* requesting information and the conduction of an investigation into these agencies criminal activities, and then on July 27, 2018, Plaintiff received a letter from Florida DHSMV, Inspector General office, acknowledging the reception of Plaintiff's complaint with its supporting documents, but that government letter was purposefully designed or fabricated to mislead and misrepresent the facts of the criminal conduct of Florida DHSMV, which was discovered during the I.G. investigation but refused to prosecute the violators of the crime, but instead referred the matter back to the perpetrators to allow them the opportunity to cover up their misdeeds *(See E-12).*

**5)** Florida DHSMV, Inspector General office forwarded Plaintiff's complaint and exhibits to Florida DHSMV, Division of Motor Services (MS) and then Plaintiff

received a letter dated August 31, 2018, wherein Florida DHSMV, (MS) made all types of false statements, such as claiming a fictitious error occurred when Florida DHSMV, system attempted to update Plaintiff driver's history, which indicated Plaintiff's Florida ID card as being cancelled, when it had only expired and further Florida DHSMV,(MS) stated falsely that Plaintiff driver's record was updated to reflect the correct information *(See E-13)*. Plaintiff never possessed an ID card from Alabama but did have driver license issued from the dates of 1979 to 1994 and moved to Florida in the early years of 2000 and was issued an ID card around that period of time and on May 10, 2019, Plaintiff was issued his first Florida driver's license. So, the August 31, 2018, government letter from Florida DHSMV, (MS), is totally false and fabricated because Plaintiff didn't possess an ID card from any state during that time frame nor did he live in Florida and to prove the falsity of the above-mentioned letter, is the fact that Florida DHSMV, (MS), attached a three-year corrected driver's record printout to the August 31, 2018, letter and nowhere on that document does it show any item being cancelled, suspended, revoked or expired *(See E-14).* and this is confirmation that all the exhibits from Alabama and Florida DMV are false and fabricated government documents.

6) Further the Plaintiff requested and received a lifetime history of his Alabama driver's license, dated December 23, 2020, *(See E-17),* and then Plaintiff ordered a transcript of his driver's record from Florida DHSMV, dated January 11, 2021, *(See E-18),* and on March 29, 2021, Plaintiff received a false and fabricated government driver's record from Florida DHSMV, who had filed the document in

the lower court as evidence and all the above-mentioned documents are supposed to be historical records and contain accurate and complete information but they all failed to display that Plaintiff's Alabama and Florida ID cards or driver licenses had ever been suspended, cancelled, revoked or expired, so this proves that the June 26, 2018, government email from ALEA, DLD Chief  and the August 31, 2018, government letter from Florida DHSMV, (MS) are both false and fabricated documents *(See E-8,13).* The Alabama driver history abstract contain some inaccurate and concocted information, such as, the expiration date of Plaintiff's driver license, which is, August 4, 2002, yet this document shows July 8, 1998, as the issue date, but in the year of 1998, Alabama and Florida DMV illegally placed a hold on Plaintiff driver's privileges and according to several government document from Florida DHSMV, which shows Plaintiff's driver license expiring on July 16, 1998, and since Plaintiff never possessed driver license in Florida until May 10, 2019, then that information was illegally obtained from Alabama DMV, *(See E-4,5,6),* to try and cover up the action of conspiracy and fraud, so this is clear proof that Alabama fabricated the above-mentioned document by adding false information and leaving out accurate and complete information.

**7)** Plaintiff also filed two other false documents from Florida DHSMV, with this Court, which are as follows: (1) a transcript of Plaintiff driver record dated January 11, 2021, (2) a driver record dated March 29, 2021, and both documents contain fabricated information under the heading of "original license issued", which displays the date of August 9, 1987, *(See E-18,19),* in which Plaintiff was never issued driver license on that date but rather the above date is basically the date

Plaintiff had a car accident in Gulf Breeze, Florida in the summer of 1987, so Florida DHSMV, is knowingly and purposefully placing false information on government documents for malicious reasons because the Alabama driver history abstract only dates back to August 4, 1994, **(See E-19),** and Plaintiff never had driver license in Florida until May 10, 2019, so the August 9, 1987, original license issued date is fabricated information and according to both the above-mentioned Florida DHSMV, driver records, January 30, 2014, is the earliest date on file that Plaintiff had any driver license or ID card information available, so the August 9, 1987 date does not exist.

## CAUSE OF ACTION -2- CONSPIRACY

**1)** Florida DHSMV, ALEA, DLD, and an unknown attorney worked together to hinder and frustrate Plaintiff from obtaining documentation concerning the illegal hold placed upon his driver's license and then used their power and influence with other agencies to make sure Plaintiff did not receive due process. In the year of 1987, Plaintiff had a car accident, and the victim(s) apparently obtained a lawyer and filed a civil action against Plaintiff and was granted default judgement in the year 1989, and that attorney illegally and unofficially filed that default judgement with Florida DHSMV, in the same year **(See E-4).** The above-mentioned exhibit is a contrived or invented government document that contain fabricated information and it shows and prove a conspiracy between the victim's attorney, Alabama and Florida DMV, and this illegal alliance, is an ongoing criminal enterprise because when Plaintiff filed his civil action in the small claims court,

28

the Florida DHSMV, filed a motion to dismiss and in that document the Defendants were constantly referencing the victim's attorney with the following terms of; private Florida attorney, unnamed Florida attorney, and unnamed private personal injury attorney *(See E-1,2,3),* and this proves not only does the Defendants know the identity of the above-stated attorney but are presently engaged in some type of conspiratorial activities with said person.

**2)** On June 12, 2018, Plaintiff sent letters with supporting documentation to the following agencies: ALEA, (DLD), ALEA, Title VI Program and Florida DHSMV, *(See E-6),* and all of these agencies had the responsibility and duty to assist, investigate and report criminal conduct but they received Plaintiff's information and conspired to invent stories to try and justify placing the twenty year hold on Plaintiff driver's privileges and to confirm that assertion, Plaintiff received an email dated June 26, 2018, from ALEA, (DLD), Chief, claiming that she spoke to a Florida DHSMV, official concerning Plaintiff's Alabama driver license being suspended, yet ALEA, (DLD), is the culprit responsible for placing the hold on Plaintiff's Alabama driver license on July 8, 1998, and then reinstated them on June 26, 2018, but in that email, ALEA, (DLD), was conspiring with Florida DHSMV, by requesting information pertaining to the suspension status of Plaintiff's Alabama driver license, which is criminal because first this was an Alabama issue and second, Plaintiff was not a resident in Florida in the year of 1998, which means, Plaintiff didn't possess a driver license or ID card from that state, so Florida DHSMV, had no personal information on Plaintiff to share with ALEA, (DLD), but this action is an attempt to cover up the crimes committed by both

DMV agencies in the year of 1998 *(See E-8,13).*

**3)** Plaintiff contacted the following persons, officials and agencies by way of certified mail on July 23, 2018: ALEA, Acting Director Charles Ward, ALEA Secretary Hal Taylor and Florida DHSMV, Inspector General Office, due to the fraud and conspiracy violations committed by the above-mentioned agencies, officials, departments and divisions *(See Exhibits 9,10,11).* Then Plaintiff received a letter from Florida DHSMV, Inspector General Office dated July 27, 2018, and that letter proves without a doubt that a large percentage of Florida DHSMV, officials, divisions and departments, that were directly involved in the resolution process of Plaintiff's complaint were in lock step in a conspiracy relating to Plaintiff's driver license issue because Plaintiff sent the certified letter to Florida DHSMV, Inspector General Office on July 23, 2018, and they responded with a letter dated July 27, 2018, *(See E-12),* and this is supposed to be an investigative body, who is claiming that they reviewed and determine that the matter would be best handled by the Florida DHSMV, record divisions or motorist services, when Plaintiff was alleging fraud and conspiracy, and further Plaintiff provided exhibits supporting those allegations, and after the fact of only having the complaint and exhibits in their possession for approximately few days, which is impossible to conduct a thorough and complete investigation, so it is obvious that Florida DHSMV, Inspector General already had the above-mentioned information in their possession prior to receiving it from Plaintiff but determined to conspire with, and assist Florida DHSMV, (MS), to concoct a narrative to cover up their criminal conduct, instead of prosecuting the perpetrators of the crime or to report the

30

violations to the proper federal authorities.

**4)** Then Plaintiff received a letter from Florida DHSMV, Division of Motorist Services (MS), dated August 31, 2018, claiming to have rectified an error that they asserted occurred when their system showed Plaintiff identification card as being cancelled when it had only expired *(See E-13),* the above stated letter is proof of a conspiracy between Alabama and Florida DMV, because first Plaintiff never lived in Florida during that period of time, which means, there was no driver license or ID card information on Plaintiff in the Florida DHSMV, system. And secondly the language in the above-mentioned letter is similar to the words of ALEA, DLD, Chief Deena L Pregno, where she stated that she contacted an official from Florida DHSMV, concerning Plaintiff's Alabama driver license status and the Florida DHSMV, official told ALEA, DLD, Chief, that when Plaintiff Florida ID card expired the system reported it as a driver license from a suspended state *(See E-8),* this is proof that these are the culprits behind the illegal twenty year hold placed on Plaintiff driver's privileges because Plaintiff didn't live in Florida during that time period but possessed an Alabama driver's license, so why was ALEA, DLD, requesting Alabama driver's information from Florida DHSMV, unless both agencies were conspiring to concoct the same story to attempt to justify their illegal action. Attached to the Florida DHSMV, MS, letter dated August 31, 2018, was a three-year corrected driver's record *(See E-14),* and on March 29, 2021, the Defendants filed a motion to dismiss in the small claims court and attached a driver's record printout *(See E-19),* then on January 11, 2021, Plaintiff ordered a

lifetime transcript of his driver's history from Florida DHSMV *(See E-18),* and on December 31, 2020, Plaintiff requested a lifetime driver's abstract from Alabama DMV, *(See E-17),* all the above exhibits are supposed to be historical driver's records and contain accurate and complete information but they failed to show Plaintiff's Alabama or Florida driver license or ID card ever being suspended, revoked, cancelled or expired, so this proves that both DMV agencies have conspired to coverup their criminal conduct by falsifying and fabricating government documents and filing perjurious information in the courts to support those documents.

**5)** After Florida DHSMV, Inspector General failed to investigate the criminal conduct of Alabama and Florida DMV, Plaintiff sent a complaint and supporting evidence by way of certified mail to Florida Attorney General Office, on August 28, 2018, *(See E-20),* and on September 13, 2018, Plaintiff received an email from Florida Attorney General Office refusing to investigate obvious fraud violations but instead conspired with the perpetrators by inappropriately insinuating Plaintiff had some basic driver license issue when in reality Plaintiff distinctly alleged that Florida and Alabama DMV, conspired to falsify and fabricated government documents *(See E-21),* the afore-mentioned officials and agencies have the responsibilities and duties to oversee, manage and investigate any violation, complaint or mistake reported to their offices, so it seems impossible for Plaintiff to have provided them with clear proof of this grievous act of falsifying government documents to deny Plaintiff's driver license for twenty years and none of those entities took the appropriate steps to resolve the issues

**32**

except by collectively deciding to hinder any progress that would rectify said problem.

**6)** Then on February 18, 2022, Florida Attorney General became the legal representative of Florida DHSMV, and acquired possession of all Plaintiff's motions, pleadings and exhibits *(See E-22),* which showed and proved that the Defendants had committed serious crimes and further, Florida Attorney General also have access to all the documentation from Alabama and Florida DMV, pertaining to the illegal actions taken against Plaintiff driver privileges for over twenty years, specifically the email dated June 26, 2018, from ALEA, DLD, the letters from Florida DHSMV, I.G. and Motor Services and all the driver history records *(See E-8,12,13,14,17,18,19)* but instead of the Florida Attorney General removing its self from the case and initiating an investigation into the criminal conduct of the Defendants, Florida Attorney General illegally conspired with others to used its influence and power to force the HCSCC, to violate all type of laws without allowing due process to be implemented by the Court to resolve this unjust dilemma.

**7)** The Florida Attorney General willingly and purposefully filed a motion to dismiss on March 9, 2022, after coming into possession of clear evidence that their client had committed fraud and conspiracy by means of falsification and fabrication of government documents and instead of notifying federal authorities, the Florida Attorney General conspired with the Defendants and the HCSCC, to help try to conceal and contain this action from coming into fruition by compelling the HCSCC, to hold an illegal final hearing without the HCSCC, complying with the

**33**

rules of civil procedure, which required the HCSCC, to enter an order fixing a date for trial, which never occurred *(See E-22,23,24)*. Following the illegal activities of the above-mentioned officials Plaintiff file a motion to expedite on April 20, 2022, and the HCSCC, acknowledged the reception of that document on that date, then another reception date was stamped on Plaintiff's motion to expedite, which was, May 3, 2022, then a hearing date was set for April 27, 2022, and finally another hearing was set for May 24, 2022 *(See E-23),* and none of that information was binding because the HCSCC, never issued orders or directives to initiate the hearing process, so this document is proof positive that a conspiratorial scheme was being implemented by the HCSCC, Florida Attorney General and the Defendants.

**8)** After the HCSCC, the Florida Attorney General, and the Defendants illegally held a final hearing on May 24, 2022, Plaintiff filed a motion for sanctions on opposing counsel because of their conspiratorial plan to compel Plaintiff into an illegal activity and on May 25, 2022, the Florida Attorney General Office emailed Plaintiff a message asserting that HCSCC, reserved ruling and requested them to upload a proposed order to the Court and if Plaintiff failed to comply by the end of day of May 31, 2022, the Florida Attorney General would filed the proposed order with the Court *(See E-25),* but Plaintiff refused to reply, and no action followed that rejection, and this clearly proves a joint effort to purposely violate state and federal laws.

**9)** Plaintiff sent complaints and supporting documentation byway of certified mail

**34**

to the following entities on June 16, 2022: Florida Judicial Qualifications Commission; Federal Bureau of Investigation; Florida Attorney General *(See E-30,31,32),* due to the disrespect and violation of the law by the afore-mentioned entities and all those complaints and supporting exhibits was due to be delivered on June 21, 2022, but the next day after all the involved parties received Plaintiff's complaint an assassination attempt on Plaintiff's life was carried out by a government hitman who was under the instructions of a cabal of criminals who had been exposed in a conspiracy to defraud the states and federal government.

## CAUSE OF ACTION -3- NEGLIGENCE

**1)** On September 5, 1989, Defendants, ALEA, DLD, and Florida DHSMV, and its officials was supposedly given fabricated and falsified information pertaining to an illegal default judgement from a lawyer who had no connection to or authority with either of the afore-mentioned agencies but was allowed to filed an illegal non-binding document and dictate the required course of action necessary to achieve their objective *(See E-4),* yet instead of the Florida DHSMV, and ALEA, DLD, complying with their own rules and regulations governing proper behavior and procedures in the matter of driver's privileges, they allowed this information to be used against Plaintiff for malicious purposes.

**2)** Plaintiff then sent a complaint with supporting exhibits to the Defendants, Florida DHSMV, and  ALEA, DLD, on June 18, 2018, *(See E-6),* requesting their assistance in the resolution of Plaintiff's driver license issue and on June 26, 2018, Plaintiff received a false and fabricated government email from ALEA, DLD, claiming to have reinstated Plaintiff driver's privileges, without compensating for

damages or explaining why they were being reinstated or the reason for the alleged suspension *(See E-8),* so both ALEA, DLD and Florida DHSMV, failed to perform their obligatory duties but instead collaborated for over twenty years without a just cause to deny Plaintiff redress for an illegal hold put on his driver's license by their refusal to relinquish documents solicited by Plaintiff so that the proper and necessary actions could be taken to alleviate the stressful condition place upon him by those agencies without due process.

3) Plaintiff continuous effort in contacting Florida DHSMV, ALEA, DLD, concerning his driver's privileges issues were ignored and forwarded back through the same channels previously communicated with by Plaintiff, so on July 23, 2018, Plaintiff sent certified complaints and supporting documents to the following entities: (1) ALEA, Secretary *(See E-9);* (2) ALEA, Acting Director *(See E-10);* (3) Florida DHSMV, Inspector General *(See E-11),* requesting aid in the form of documentation and investigations into the illegal activities of their agencies and officials, but the Defendants apparently took that information and used it to frustrate or hinder Plaintiff from obtaining a just outcome.

4) Plaintiff received a letter from Florida DHSMV, Inspector General Office dated July 27, 2018, claiming to have received Plaintiff's complaint and exhibits and had conducted and completed an investigation into the matter and referred it to Florida DHSMV, Motor Services *(See E-12),* and on August 31, 2018, Florida DHSMV, Motor Services fabricated a false government document asserting that some error occurred during the period of July 16, 1998, where Plaintiff's I.D. card was supposedly reported as cancelled when it had allegedly only expired, but in

36

reality Plaintiff never lived or had an I.D. card in Florida until the early part of the year 2000 and only received a driver license for the first time on May 10, 2019, so both the afore-mentioned divisions of Florida DHSMV, were negligent and conspiratorial in behavior and failed to perform their required duty to report and investigate criminal conduct. And further the Defendants Florida DHSMV, Motor Services, filed a copy of Plaintiff driver's record history along with their August 31, 2018, letter with the HCSCC, and nowhere on that document does it show any item being cancelled, revoked, suspended or expired *(See E-13),* and all of the above-stated officials knew that they was holding Plaintiff's driver license in limbo without legal justification because neither agency have or can produce documents showing that Plaintiff driver license or I.D. card ever had any legal issues, so the Defendants were knowingly and purposefully punishing Plaintiff without a cause.

5) Plaintiff provided clear evidence to the Defendants Florida DHSMV, and ALEA, DLD, for over a lengthy period, showing that the illegal denial of his driver's privileges was not warranted since Plaintiff had not violated any traffic or motor vehicle rule or regulation, but the above-mentioned agencies were negligent and refused to comply or correct the problem. And in a final attempt, Plaintiff sent certified complaints and exhibits to Florida DHSMV, and ALEA, DLD, on October 16, 2018, seeking resolution of a twenty-year-old travesty *(See E-15,16),* but the Defendants rejected the offer and failed to take responsibility for their error, so Plaintiff was forced to file a civil action in the federal court.

6) And the reason for Plaintiff's failure in the federal court was due to the lack of

knowledge of laws and legal procedures, so Plaintiff decided that the small claims court would render better results but before initiating that type of action, Plaintiff obtained the following documents from ALEA, DLD, and Florida DHSMV: (1) Plaintiff's Alabama driver license lifetime history printout *(See E-17)*; (2) A transcript of Plaintiff's Florida driver record *(See E-18)*; (3) And a copy of Plaintiff's Florida driver's license history, provided by the Defendants on March 29, 2021, and all the above-mentioned exhibits are false and fabricated government documents and failed to show and prove that Plaintiff's driver license or I.D. card was ever suspended, revoked, cancelled or expired, which confirmed that the Defendants refused to correct Plaintiff's driver's license issue and conspired to coverup the criminal conduct of their agencies.

**7)** On April 20, 2022, Plaintiff filed a motion to expedite and on May 23, 2022, he filed a motion for sanctions of opposing counsel, due to the Florida Attorney General and the HCSCC, conspiratorial behavior to plan and execute an illegal final hearing on May 24, 2022, without officially notifying Plaintiff of such, then fabricating court documents in an attempt, to justify their criminal conduct *(See E-22,23,24)*. But before the above-stated scheme began, the Florida Attorney General became the new legal representative of Florida DHSMV, on February 18, 2022, and acquired possession of all Plaintiff's court filing, which included false and fabricated government documents from Alabama and Florida DMV, and the Florida Attorney General have access to evidence relating to the crimes committed against Plaintiff for twenty plus years but refused to report or investigate the criminal activities.

**38**

**8)** Then on June 16, 2022, Plaintiff sent certified complaints to the following entities: (1) Florida Attorney General; (2) Federal Bureau of Investigation; (3) Florida Judicial Qualifications Commission *(See E-30,31,32),* and a few years before the above date, Plaintiff sent a similar certified complaint to the then Florida Attorney General Pam Bondi, on August 28, 2018, *(See E-19),* and received a response from that office on September 13, 2018, basically refusing to take the necessary action to resolve the issue *(See E-20).* And on June 22, 2022, possibly all the government parties involved in this action conspired to assassinate Plaintiff by utilizing a government agent or an informant to carry out their scheme and Sheriff Department incident records can confirm those allegations.

## PRAYERS FOR RELIEF

Wherefore, Plaintiff prays for a judgement as follows:

**1)** For general, specific, compensatory, incidental, and consequential damages according to proof at trial, but in an amount not less than $7,000,000,

**2)** That the Court grant Plaintiff Compensatory Damages for the humiliation, emotional distress, and other damages caused by the Defendant's conduct,

**3)** That the Court grant Punitive Damages for the Defendant's malicious and recklessly indifferent conduct,

**4)** That the Court grant Plaintiff all lost business revenue and employment wages because, Plaintiff had to litigate these cases for years and would have been entitled to enjoy those benefits, if not conspired and retaliated against by the

**39**

Defendants,

**5)** That the Court grant Plaintiff expenses of litigation, including reasonable attorney fees, pursuant to the Title VII and 42 U.S.C. 21 section 1988,

**6)** That the Court grant Plaintiff a jury trial,

**7)** That the Court grant Plaintiff all other relief the Court deems just and proper,

**8)** That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting the Defendants from engaging in further fraudulent and conspiratorial schemes to cause serious harm to Plaintiff.

Respectfully Submitted on this 15th day of July 2022.

_Neil V. Thomas_

Noel Vincent Thomas

Pro Se Litigant

14004 Nephi Place, Apt # 183
Tampa, Florida, 33613
Tel - 813-817-7667
NLthms44@gmail.com

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial on all issues by jury.

40